JUDGE KATHLEEN CARDONE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

RECEIVED AUG 10 2022 CLERK, U.S. DISTRICT COURT WESTERN DISTRICT OF TEXAS BY_____ DEPUTY CLERK

FILED
2022 AUG 11  AM 9:41
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | |
|---|---|
| MARK WALTERS<br><br>*Plaintiff*<br><br>v.<br><br>LASALLE CORRECTIONS V, LLC<br><br>*Defendant* | §<br>§<br>§<br>§<br>§  No. **EP22CV0272**<br>§<br>§<br>§<br>§<br>§ |

## COMPLAINT & JURY DEMAND

### I. PARTIES

1. Plaintiff MARK WALTERS, files this suit in his individual capacity. Plaintiff is a resident of the state of Texas and a citizen of the United States. At all times herein, Plaintiff was a detainee of the U.S. Marshal Service housed at the West Texas Detention Center – WTDC.

2. Defendant LASALLE CORRECTIONS V, L.L.C., is a private prison under contract to house federal pre-tiral detainees. LASALLE is a limited liability company licensed to do business in the state of Texas. LASALLE's principal is located at 192 Bastille Lane, Suite 200, Ruston, Louisiana 71270-7150. LASALLE may receive service of process by having the U.S. Marshals Service serve the following: WARDEN SHEPPARD, c/o LaSalle Corrections, 401 Vaquero Avenue, Sierra Blanca, Texas 79851.

### II. VENUE

3. The United States District Court for the Western District of Texas, El Paso Division, is the appropriate venue for hearing this complaint as all claims alleged herein occured in this District.

## III. JURISDICTION

4. This Court has supplemental jurisdiction to hear state law claims against Defendant pursuant to *28 U.S.C. Section 1367*. Moreover, this Court has jurisdiction due to the diversity of the parties pursuant to *28 U.S.C. § 1332*.

## IV. FACTS

5. Hudspeth County, Texas and or the Hudspeth County Sheriff Department has a contract with the U.S. Mashals Service to house federal pre-trial detainees. Hudspeth County ownes the West Texas Detention Center in Sierra Blanca, Texas and has contracted with Defendant to operate the facility in accordance with the terms and conditions of Hudspeth County or the Sheriff Department's contractual obligations with the U.S. Marshals Service.

6. Plaintiff MARK WALTERS was assigned to the WTDC by the U.S. Marshal Service on November 12, 2021 as a pre-trial detainee.

7. When Plaintiff arrived at the WTDC on November 12, 2021, an intake process included a medical evaluation which was conducted by Amy Vasquez, R.N. At this time Plaintiff informed the nurse that he started experiencing pain in his left shoulder a week prior.

8. As a regular part of the intake process, Plaintiff was to be examined by a "provider" within the next week. Plaintiff understood the word "provider" to mean a doctor.

9. Plaintiff, arrived at the WTDC with a presciption for Tylenol and ibuprofen for the shoulder pain. It was Plaintiff's understanding that the medication would be continued until he was examined by the provider within the next week.

10. The medication helped relieve the should pain and although it did not make Plaintiff pain free, it did provide a better quality of life.

11. On November 16th, 2021 the Tylenol and ibuprofen prescription that Plaintiff arrived at

the WTDC with was suddenly discontinued by the LaSalle medical clinic without Plaintiff being provided any advance warning. Plaintiff had not yet been examined by a provider and no date was given to him as to when this appointment would be and a new pain management plan implimented.

12. Plaintiff went 7 days without receiving any pain reliver for the shoulder pain that he was having.

13. Plaintiff submitted a sick call on November 17th to see a provider about the pain that he was experiencing in his shoulder.

14. On or about November 22nd Plaintiff was examined by provider Desiree Medina at which time Plaintiff explained his overall health, including the shoulder pain that he was experiencing. Medina was to prescribe Plaintiff Tylenol and ordered an x-ray of his shoulder.

15. Plaintiff was prescribed Tylenol for his shoulder pain which he started receiving 2 days later on November 23rd.

16. On Thanksgiving Day, November 25th, Plaintiff dislocated his left shoulder at approximately 10 a.m. while getting out of his bunk. This dislocation caused extreme pain and discomfort.

17. At approximately 10:30 a.m. when Plaintiff's daytime housing officer, R. Solares, was making his rounds Plaintiff informed Solares that his shoulder was dislocated and that he needed to see someone in the medical department.

18. Solares was deliberately indifferent to Plaintiff's serious medical need and informed Plaintiff that he would need to submit a sick call and he would be seen by a medical provider the next day.

19. Solares, after disregarding Plaintiff's serious medical need, provided Plaintiff with a sick

call and a grievance form. Plaintiff filled out the sick call and Solares placed it in the medical sick call box outside of Plaintiff's housing area.

20. Plaintiff continued to suffer extreme pain and discomfort due to the shoulder dislocation throughout the day while waiting on medical staff to evaluate him.

21. During the afternoon, Solares went on break and was relieved by Doe 1, who was now Plaintiff's housing officer.

22. Plaintiff informed Doe 1 that he had a serious medical need: that his left shoulder was dislocated and that he had to see medical staff. Plaintiff was infomed by Doe 1 that because it was Thanksgiving Day no provider would be on the unit until after the holiday weekend.

23. After Doe 1 disregarded Plaintiff's serious medical needs, Plaintiff was provided another sick call form by Doe 1, which he filled out and gave back to Doe 1 to put in the sick call box outside the housing unit.

24. At approximately 7:30 p.m. Plaintiff's first sick call was responded to by registered nurse, Victor Duran, who Plaintiff informed that he had a dislocated shoulder and was in extreme pain. Duran disregarded Plaintiff's serious medical need and never performed a hands on physical of Plaintiff's shoulder, only informing him that no provider would be available until after the holiday weekend.

25. The evening security officer for Plaintiff's housing unit, Doe 2, who started his shift at 6 p.m., was present for Plaintiff's conversation with Duran. After being denied medical care by Duran, Plaintiff asked Doe 2 to contact someone who could send Plaintiff to the hospital, but again Plaintiff's serious medical need was disregarded.

26. The deliberate indifference shown to Plaintiff by Doe 2 and Duran compounded both the mental and physical anquish Plaintiff was suffering from. Plaintiff, being incarcerated has no

option to get medical care from any other source other than from the employees of the Defendant. The conscious disregard for Plaintiff's serious medical need by officers Solares, Doe 1, and Doe 2 is unconscionable and inhumane.

27. At approximately 10:30 p.m., more than 12 hours since Plaintiff dislocated his shoulder, licensed vocational nurse Lopez, administered pill call to Plaintiff's housing unit. Plaintiff informed Lopez and Doe 2 that his shoulder was dislocated and that he needed a doctor or something for the pain. Plaintiff was again rebuffed and denied medical treatment and was informed for the 5th time that day that no provider was available.

28. The following day, 21 hours after Plaintiff dislocated his shoulder, registered nurse Amy Vasquez answered Plaintiff's second sick call. She performed a hands-on examination of Plaintiff's left shoulder and immediately recognized that Plaintiff had an anterior dislocation, and that Plaintiff needed emergency care in a hospital. Her medical record notes that there was an "obvious deformity to the left shoulder."

29. At no time during this 21 hour period did a single employee – Solares, Doe 1, Doe 2, Duran, or Lopez make a physical or visual examination of Plaintiff's shoulder.

30. Plaintiff was rushed to Del Sol Medical Center, an almost 80 mile drive from the detention center, and finally, 25 hours after the shoulder dislocation, was admitted to the hospital and examined by a doctor. The doctor tried a couple of times to manipulate the shoulder into place and finally on the third painful attempt was able to put the joint back into place. If this third try failed, the doctor was prepared to sedate Plaintiff and force the shoulder back into place using a greater amount of physical force.

31. This entire episode of manipulating the shoulder back in place was extremely painful and agonizing, bringing Plaintiff to the edge of unconsciousness.

32. The x-ray taken in the emergency room showed that Plaintiff had a fracture in a prosthesis in the shoulder. Plaintiff had a total shoulder replacement 2 years prior in which the replacement was expected to last 15-20 years. A total shoulder replacement is an extensive and extreme medical procedure not performed regularly by orthopedic surgeons due to its complexity.

33. Throughout the 25 hours that Plaintiff's shoulder was dislocated, he lost feeling in his left hand and has since developed pain in the humerus and the clavical on the left side of his body.

34. LaSalle scheduled Plaintiff to see an orthopedic surgeon in El Paso during the month of December. Plaintiff remained in pain and discomfort throughout the month of December and was only provided ibuprofen twice a day as a pain manager.

35. The month of December came and went without Plaintiff being examined by an orthopedic surgeon. It took well over a month since the shoulder was dislocated and the medical devise fractured before he was finally examined by an othopedist in the month of January.

36. Due to the negligence of Defendant LaSalle, by and through its employees in the medical clinic, the surgeon that Plaintiff was evaluated by did not perform shoulder surgeries such as what Plaintiff required. Plaintiff instead had to receive a referal to see another surgeon and then wait additional weeks to visit a properly qualified orthopedist.

37. The second surgeon verified the fracture in the prosthesis in Plaintiff's shoulder and recommended surgery at the soonest available time. Moreover, it is the surgeon's position, as verified in the medical records, that the prolonged dislocation was the proximate cause of the prosthesis failure which ultimately led to Plaintiff needing a painful surgical procedure.

38. All throughout this time of Plaintiff's wait he experienced pain and discomfort which Defendant knew and disregarded, treating him only with ibuprofen twice a day. On 2 occassions

from November 25, 2021 through January 15, 2022, the ibuprofen was unexpectedly discontinued and Plaintiff had to go without any pain relief for 3-4 days before a new precription was ordered and filled.

## V. CAUSES OF ACTION

### COUNT 1

### VIOLATION OF ARTICLE 1 SECTION 13 OF THE TEXAS CONSITITUTION – CRUEL & UNUSUAL PUNISHMENT

39. Plaintiff incorporates by reference paragraphs 1 through 38 as if each paragraph is printed herein.

40. Defendant, a private prison contracted by Hudspeth County to detain pre-trial defendants in the state of Texas, is liable to Plaintiff – a detainee- for violating his rights under *Article 1 Section 13* of the Texas Constitution which prohibites the infliction of cruel and unusual punishment.

41. Plaintiff is a citizen of the Republic, a/k/a, State of Texas, and is entitled to the rights and protections of the Texas Constitution, including to be free from cruel and unusual punishment.

42. Defendant has a duty to provide Plaintiff with the basic life necessities such as food, shelter, clothing, and medical care, and Defendant breached that duty when it negligently hired and trained correctional officers who had no first aid training, and intentionally ignored the obvious distress that Plaintiff was in when he had an obviously deformed and dislocated shoulder. These officers left Plaintiff to have a painful dislocation for more than 25 hours, creating an unwonton infliction of unnecessary pain.

43. This inhumane breach of duty was repugnant and is the proximate cause of Plaintiff sustaining a fracture of the prosthesis in his left shoulder.

44. The debilitating and agonizing injury that was ignored by three correctional officers and

2 nurses after they were made aware of the injury constitutes cruel and unusual punishment; where Defendant failed to provide proper training with its correctional officers this created an unreasonable risk of harm to Plaintiff.

45. Defendant further violated its duty to provide Plaintiff with reasonable medical care, even though Defendant was made aware that Plaintiff was experiencing shoulder pain when he arrived at the WTDC on November 12, 2021.

46. 13 times from November 12th to November 25th, the day that Plaintiff dislocated his shoulder, Defendant was made aware by Plaintiff of his shoulder pain, and Defendant's negligently trained correctional officers disregarded their responsibility for the safety and well-being of Plaintiff who was in their control, and subjected him to abusive treatement in disregarding Plaintiff's continued cries for help from the shoulder disloction.

47. It is unconscionable that Defendant would hire individuals who disregarded any standard of human decency and ignored Plaintiff's pleas for help just because it was Thanksgiving Day. Plaintiff, as a pre-trial detainee, has greater rights than a convicted prisoner, and Defendant's negligent hiring and negligent training of Solares, and Does 1 and 2, who had no policy to follow and no first aid certification, resulted in Plaintiff being excessively punished by the people who had control over him.

48. A dislocated shoulder that is the proximate cause of Plaintiff's fractured prosthesis is not a minor or frivolous injury, but one of significance that did not cause a minor discomfort to Plaintiff, but had him take a combined 16 Tylenol and ibuprofen tablets in the course of 12 hours. The torturing pain prevented Plaintiff from sleeping Thanksgiving night: he was just left pacing the dayroom floor because he could not find comfort in either the sitting or laying positions.

49. Moreover, during a 12 hour period, Plaintiff spoke with 2 nurses who never conducted a physical or visual examination of Plaintiff's shoulder. It was only after 21 hours of dislocation that the shoulder was evaluated by a third nurse whose notes indicate the "obvious deformity to the left shoulder."

50. The acts and omissions of Defendant's negligent hiring, negligent training, and ordinary negligence of its correctional officers equates to cruel and unusual punishment when they ignored Plaintiff's pleas for medical treatment, thus is the proximate cause of Plaintiff's injury.

### COUNT 2
### NEGLIGENCE

51. Plaintiff incorporates by reference paragraphs 1 through 50 as if each paragraph is printed herein.

52. Defendant has a duty to ensure the safety of Plaintiff, and this includes providing him food, clothing, shelter, and emergency medical care when required. As a pre-trial detainee, Plaintiff has no option other than to rely on Defendant for his medical care, and Defendant breached this duty when on November 25, 2021 Plaintiff informed correctional officers Solares, Doe 1, Doe 2, and nurses Duran and Lopez, that he had a dislocated shoulder and they failed to get him the emergency care that he required.

53. There is a high risk that a detainee, including Plaintiff, could need emergency medical care, and Defendant failed to reduce this risk when it neglegently hired correctional officers [Solares, Doe 1, and Doe 2] who it knew were not certified in first aid, and then failed to train them or provide training to them to get their certification.

54. There is forseeability of an unreasonable risk of injury in a private prison, such as that Defendant operates [WTDC], that a violent act or accident may occur at any moment, and Defendant's failure to train employees in first aid and how to make emergency medical

assessments is the proximate cause of Plaintiff's injury, when on Thanksgiving Day 2021, Plaintiff required emergency medical services and Defendant's officers Solares, Doe 1, and Doe 2 failed to aid Plaintiff when he was in need.

55. Defendant, when hiring and training Solares, Doe 1, and Doe 2, failed to use ordinary care and created an unreasonable risk to Plaintiff by not establishing a policy to make employee first aid certification a mandatory requirement for employment at the WTDC. This policy created an unreasonable risk of harm to Plaintiff and is the proximate cause of his injury.

56. As an operator of private prisons, Defendant has or should have superior knowledge of the risks associated with prison management, including the need to have first aid certified staff to assess and administer medical care or otherwise expidiantly response to a medical crisis in a setting that is often violent. Defendant breached this duty by having uncertified staff in a position of control over Plaintiff who could not obtain first aid due to Solares, Doe 1, and Doe 2 not being certified.

57. The negligent acts and omissions of Defendant to use prudent and causious care in the hiring and training of its staff as described herein is the proximate cause of Plaintiff's injury.

## COUNT 3
## NEGLIGENT HIRING

58. Plaintiff incorporates by reference paragraphs 1 through 57 as if each paragraph is printed herein.

59. Plaintiff, a pre-trial detainee, must rely on Defendant for every aspect of basic living: food, shelter, clothing and medical care. To ensure that Plaintiff's most basic needs are met, Defendant, who exercises control over Plaintiff, has a duty to hire individuals who are skillful and competent enough to make the most basic medical decisions to ensure the overall health and safety of Plaintiff, and Defendant breached this duty when it failed to exercise reasonable care in

hiring Solares, Doe 1, and Doe 2, Duran, and Lopez.

60. It is without question that the negligent conduct of Defendant's employees – Solares, Doe 1, Doe 2, Duran, and Lopez – in making no attempt to get Plaintiff medical attention that he was begging for, demonstrates the negligent hiring practices of Defendant who knew or should have known created an unreasonable risk of harm to Plaintiff.

61. Defendant failed to use reasonable care when hiring correctional officers who do not possess basic first aid training and this not only posed a risk to Plaintiff, but is the proximate cause of Plaintiff's injury. Specifically, Defendant hired officers Solares, Doe 1, and Doe 2 knowing that they were not certified in basic first aid. Defendant has instilled a hiring process that only meets the need of the detention center to fill an employment gap, and not a process to find the best qualified employee candidate that can protect the rights of pre-trial detainees whom they have overall control of and who must rely on them for basic human needs.

62. Working in a prison where violence may occur at any moment, Defendant has neglected its duty to hire personnel that can not only quash a violent uprising, but to provide aid needed to injured detainees, and this requires the hiring of persons who possess the understanding to help detainees, including Plaintiff, when in need. This understanding of "help" can mean as basis an act of just calling an ambulance, or calling the detention center's medical department in order to get an expert's diagnosis.

63. The acts and omission of Defendant's negligent hiring practices created an extreme risk to Plaintiff, a non-violent individual in a setting where serious injury may strike at any moment.

64. Defendant hired individuals knowing that they do not possess first aid training, and only requires them to have or obtain a CPR certification upon employment.

65. Defendant, whose sole purpose is to manage correctional institutions, is subjectively

aware of the risk of hiring individuals to work in a violent setting and disregards the fact that these employees have no first aid training.

66. Defendant's reckless hiring of unfit employees – Solares, Doe 1, and Doe 2 – breached its duty to ensure that Plaintiff's medical emergency would be met expeditiously and without pause.

67. The negligent hiring of Solares, Doe 1, and Doe 2 who ignored Plaintiff's pleas for medical attention for his dislocated shoulder for 25 hours was an unreasonable risk to Plaintiff.

68. The acts and omissions of Defendant hiring inexperienced correctional officers – Solares, Doe 1, and doe 2 – who lacked the ability to protect Plaintiff from a foreseeable harm proximately caused Plaintiff's injury.

## COUNT 4
## NEGLIGENT TRAINING

69. Plaintiff incorporates by reference paragraphs 1 through 68 as if each paragraph is printed herein.

70. LaSalle Corrections operations of private prisons has a duty to train its correctional officers in basic first aid.

71. Prisons are often violent settings where injuries may occur at any moment, and to ensure that the prison guards can act when emergency medical care is required, is the responsibility of Defendant who exercises control over Plaintiff.

72. Defendant has breached its duty to train Solares, Doe 1, and Doe 2, whose failure to make a first aid assessment to Plaintiff's obviously deformed left shoulder is the proximate cause of Plaintiff's injury.

73. Defendant's failing to train Solares, Doe 1, and Doe 2 created an unreasonable risk of harm to Plaintiff who must rely on Defendant and its staff for medical care. These employees ignored Plaintiff's pleas for medical treatment due to the lack of training on how to get Plaintiff

emergency treatment on a holiday such as Thanksgiving.

74. Defendant, who manages and operates private prisons around the country, knows or should know, the foreseeable risk to Plaintiff by failing to train its correctional officers in first aid. Specifically, Defendant's employees intentionally did not seek emergency care for Plaintiff because they were negligently trained to believe that on holidays Plaintiff could not get treatment on the facility for his dislocated shoulder. Moreover, the employees were never trained that in the case of an emergency, Plaintiff could have been transported to an El Paso hospital emergency room.

75. In the alternative, Defendant does not provide access to outside providers in certifying first aid to its employees, thus not making a first aid certification a mandatory component for employment.

76. Ensuring that Plaintiff is safe and that his medical needs are met is a primary duty of Defendant, and when Defendant failed to train its staff in first aid, or provide outside resources for the certification of first aid to its employees, breaches this duty.

77. Plaintiff informed officers Solares, Doe 1, and Doe 2 that he required medical care for his severly dislocated shoulder but these three officers, individually and collectively, ignored Plaintiff's pleas for first aid because they were inadequately trained or had no training whatsoever when it came to adminstering first aid or the assessment of injuries.

78. The acts and omissions of Defendant in its negligent training and failure to train Solares, Doe 1, and Doe 2 in providing Plaintiff emergency care, or instuct in obtaining emergency care, is the proximate cause of Plaintiff's injury.

## COUNT 5
## MENTAL ANGUISH

79. Plaintiff incorporates by reference paragraphs 1 through 78 as if each paragraph is printed

herein.

80. The negligent acts and omissions of Defendant is the proximate cause of Plaintiff's mental anguish.

81. There is forseeability that in the correctional setting that severe injuries will occur and Defendant's negligent hiring and training of its officers resulted in Plaintiff having his left shoulder dislocated for 25 hours, thus causing a fracture in his 2019 implanted prosthesis.

82. Defendant contracts with Hudspeth County to house Plaintiff, a pre-trial detainee, thus accepting the responsibility [duty] to provide Plaintiff food, shelter, clothing, and medical care, Defendant's breach of its contract [duty], breached the duty owed to Plaintiff to protect him from physical harm.

83. Defendant failed to exercise reasonable care when it established a policy to forego mandatory first aid certification for its employees knowing that there is a high risk that correctional officers will be required to utilize this training at some point during their employment.

84. The 25 hours that Plaintiff's shoulder was dislocated caused anxiety and overall shock. Moreover, the edge of unconsciousness that rendered Plaintiff unable to move for over an hour while at the hospital resulted from Defendant's failure to mitigate risks to its charges assigned to Defendant's care.

85. As a proximate cause of the acts and omissions of Defendant's conduct, Plaintiff suffers mental anguish which has caused him weight loss; anxiety; PTSD; sleeplessness; lack of appetite; irritability; headaches; and depression.

## VI. DECLARATORY RELIEF

86. Plaintiff incorporates by reference paragraphs 1 through 85 as if each paragraph is printed herein.

87. Plaintiff requests that the Court enter a declaration for the acts and omissions of Defendant's violations of Plaintiff's rights to be free from cruel and unusual punishment under Article 1 Section 13 of the Texas Constitution which is a proximate cause of Plaintiff's injury.

## VII. DAMAGES

88. Based on the contents of this complaint, Plaintiff seeks the following damages:

### ECONOMIC DAMAGES

89. Plaintiff's current pecuniary loss is approximately $170 but expects this amount to increase throughout his detention and upon his release as he will incure medical and other healthcare costs associated with Defenant's acts and omissions complained of here.

### NON-ECONOMIC DAMAGES

90. Plaintiff seeks non-economic damages for pain and suffering, mental anquish, inconvienience, loss of enjoyment of life, and any other non-economic damages that he may be so entitled to from each Defendant.

91. Plaintiff requests economic and non-economic damages of more than $250,000 but less than $500,000, plus prejudgment interest on any amounts awarded to him.

## VIII. ATTORNEY FEES & COSTS

92. Plaintiff is filing his complaint *pro se*, but in the event that he hires an attorney at any time before the conclusion of this action, Plaintiff will seek the recovery of any attorney fees and or other costs that he may be so entitled to.

## IX.
## JURY DEMAND

93. Plaintiff requires that his case be tried by a jury.

## X.
## RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully asks this HONORABLE COURT for the following relief:

1. A declaration that Defendant violated Plaintiff's right to be free from Cruel and Unusual Punishment under *Article 1 Section 13* of the Texas Consititution.

2. Plaintiff seeks a finding that Defendant engaged in negligent hiring practices.

3. Plaintiff seeks a finding that Defendant engaged in negligent training of its employees.

4. Plaitiff seeks a finding that Defendant was negligent to the care owed to Plaintiff as a pre-trial detainee.

7. Plaintiff seeks a finding that the acts and omissions of the Defendant caused Plaintiff's mental anguish.

8. Plaintiff seeks economic damages to be determined by the Court or a jury.

9. Plaintiff seeks non-economic damage in an amount set by the Court or jury for Defendant's negligence; negligent hiring; negligent training; and mental anguish in an amount to be determined by the Court or a jury.

11. Plaintiff seeks attorney fees and any other costs that he may be so entitled to.

12. Plaintiff seeks pre-judgment interests.

13. Plaintiff seeks any other relief that he may be so entitled to.

Respectfully submitted,

*Mark Walters*

Mark Walters #30934004
c/o WTDC
P.O. Box 430
Sierra Blanca, Texas 79851

***Plaintiff Pro Se***